UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

MAY - 6 2010

CLERK, US DISTRICT COURT
NORFOLK, VA

ANNETTE GASTMIER,

   Plaintiff,

v.          4:09-cv-117-RBS-DEM

MICHAEL J. ASTRUE, COMMISSIONER,
Social Security Administration,

   Defendant.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Annette Gastmier ("plaintiff" or "Gastmier"), brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of the decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability insurance benefits (DIB) and supplemental security income (SSI) under Title XVI of the Social Security Act. By order filed November 17, 2009, this action was referred to a United States Magistrate Judge[1] pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the final decision of the Commissioner be affirmed.

---

[1]The Order of Referral designated United States Magistrate Judge James E. Bradberry who retired effective January 31, 2010. This Report and Recommendation was prepared by Judge Bradberry's duly appointed successor, United States Magistrate Judge Douglas E. Miller, who was appointed effective February 1, 2010.

1

## I. PROCEDURAL HISTORY

Gastmier filed an application for disability insurance benefits and SSI under Titles II and XVI of the Social Security Act on July 11, 2006 alleging disability since June 1, 2003, due to vision problems with her left eye. Her claim was denied initially and upon reconsideration. (R. 40-55). Gastmier requested a hearing before an administrative law judge (ALJ), which took place on February 14, 2008, before William T. Vest, Jr. (R. 20-35). On February 28, 2008, the ALJ denied the claims by written opinion. (R. 11-17). The ALJ found Gastmier did not suffer from a severe impairment as a result of either her eye condition or bi-polar disorder - a new ground raised during his review. Gastmier requested review by the Appeals Council, which was denied on July 24, 2009. (R. 1-4). Gastmier timely commenced this action for judicial review under 42 U.S.C. § 405(g) and 1383(c)(3).

## II. FACTS

Gastmier is a high school graduate, who was 50 years old at the time of the ALJ's decision. (R. 107) She had a long career as a computer security technician before being laid off in 2002. She has also worked as a hospital records clerk (R. 104).

On August 16, 2003, Gastmier was struck in the left eye during an assault. At Sentara Careplex Hospital, x-rays of her injury revealed a suspected orbital blowout fracture of her left eye, a diagnosis later confirmed by her attending physician. (R. 188,

2

191). The medical records at the time of her injury and thereafter do not reflect any further treatment for the fracture, however, Gastmier testified that she later developed a spasm, resulting in the occasional involuntary closure of her left eye. (R. 31-32). This vision problem led to her filing an application for DIB and SSI. (R. 40; 50; 103).

On October 2, 2008, Richard Carlson, M.D. consultatively examined Gastmier's eye and diagnosed her condition as essential blepharospasm. He indicated that this condition "can be a very disabling disease, in [that] the eye involuntarily closes. This is similar to a wink, but again there is the involuntary aspect to this." (R. 200). Dr. Carlson also found that Gastmier had uncorrected visual acuity of 20/40 in her right eye and 20/50 in her left eye and with refraction, her vision improved to 20/25 on the right and 20/20 on the left. (R. 200). He did not find that her condition was presently disabling, and stated that the disorder may be treated with Botox which has "worked quite well in dealing with this involuntary closure." (R. 201).

Other than Dr. Carlson's observations, the record contains no other medical records with regard to Gastmier's condition of essential blepharospasm. During regular visits to the Peninsula Institute for Community Health (PICH), for ordinary medical care, Gastmier did not report any continuing problems with the involuntary closure she experienced in her left eye. The medical

3

records from PICH either specifically indicate an eye examination within normal limits (R. 286, 290-94) or fail to document the condition of Gastmier's eyes in any respect. (R. 285, 287, 289).

Gastmier was first diagnosed with bi-polar disorder by Joselito B. Morales, M.D., a psychiatrist who evaluated Gastmier on May 8, 2007.[2] On that date, Dr. Morales' mental status examination revealed that Gastmier was alert, ambulatory, with good hygiene and grooming. Dr. Morales described her as "friendly and pleasant to interact with". She noted that Gastmier had a "mild facial twitch on the left side of her cheek", but otherwise exhibited normal motor activity. She spoke in a coherent and directed manner. Although her "mood was depressed", and her affect "constricted in range", she denied any thoughts of suicide or homicide as well as any auditory hallucinations or delusional thinking. Dr. Morales noted that she was "fully oriented to time, place and person" and that her recall of recent and remote memories was good. She found her concentration to be fair, abstract thinking good, with an adequate fund of information and good insight and judgment. (R. 240). Dr. Morales' diagnostic impression was bi-polar disorder, and polysubstance dependence currently in partial remission. She

---

[2] Two state agency psychiatrists performed record reviews and completed a psychiatric review technique form in connection with Gastmier's application for benefits. Both found no "medically determinable impairment." (R. 203 - 230). These reports were prepared prior to Dr. Morales' diagnosis and not relied upon by the ALJ, and therefore are not reviewed in detail here.

assigned her a GAF score of 55, began treatment with medication and advised Gastmier to continue with individual therapy. (R. 241).

Dr. Morales continued to follow Gastmier's care. On August 15, 2007, she again examined Gastmier, reviewed her prior history and assessed her mental status as good. Although her mood was "mildly irritable", Dr. Morales described her affect on this visit as "full and stable". She assessed her with "bi-polar disorder, improving", and "polysubstance dependence, in remission." (R. 265)

On October 9, 2007, Dr. Morales again reviewed Gastmier's symptoms and history, and her progress with the prescribed therapies. She concluded that her mental status was stable from the preceding visit and assessed her bi-polar disorder as "much improved". On December 21, 2007, Dr. Morales concluded that Gastmier had "done well" on the prescribed medicines. Though she continued to have conflict with her mother, Gastmier remained in her mother's residence where she provided care. She reported to Dr. Morales that she sleeps well at night, and has good appetite and energy. She enjoys attending her AA meetings and had reached 18 months of sobriety. Dr. Morales described her mood as normal, her affect continued to be "full and stable", her insight and judgment were good. (R. 255). On that date, Dr. Morales assessed her bi-polar disorder as in remission. (R. 255).

## III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig,

---

[3] "The issue . . . therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To be eligible for SSI under Title XVI of the Social Security Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and 42 U.S.C. § 1382(b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and 42 U.S.C. § 1382(c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

7

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th

8

Cir. 1992)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A. ALJ's Decision.

In the present case, the ALJ made the following findings under the five-part analysis: (1) Gastmier has not engaged in substantial gainful activity since June 1, 2003, and(2) although impaired, Gastmier's medical conditions are not severe impairments, and therefore she is not disabled. Because the ALJ found Gastmier's impairments were not severe, he did not proceed to Steps 3 - 5 of the sequential analysis. (R. 16-17).

In her motion for summary judgment, Gastmier alleges that(1) The ALJ erred in finding her essential blepharospasm did not significantly limit her ability to perform basic work activities; and (2) the ALJ erred in finding her bi-polar disorder and anxiety did not significantly limit Gastmier's ability to perform basic work activities. Because the ALJ's decision is supported by the medical evidence, the Court recommends that the ALJ's decision be affirmed.

## B. Substantial Evidence in the Record as a whole supports the ALJ's decision that Gastmier's impairments are non-severe.

In this case, the ALJ found both of Gastmier's conditions were non-severe. Relying principally on her own testimony, Gastmier claims that the ALJ's finding that her impairments were non-severe is not supported by the evidence in the record taken as a whole.

9

An impairment, or combination of impairments, is considered severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c)and 416.920(c). The Social Security regulations define basic work activities as the abilities and aptitudes necessary to do most jobs including:

1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2. Capacities for hearing, seeing and speaking;

3. Understanding, carrying out and remembering simple instruction;

4. Use of judgment;

5. Responding appropriately to supervision, co-workers and usual work situations; and

6. Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

An impairment is non-severe only if it is a slight abnormality, which has such a minimal effect on the individual that it would not be expected to interfere with their ability to work regardless of age, education or experience. Evans v. Heckler, 734 F. 2d 1012, 1014 (4th Cir. 1984)(citations omitted).

10

1.  **Substantial evidence in the record as a whole supports the ALJ finding that Gastmier's essential blepharospasm is not a severe impairment.**

The Commissioner found that Gastmier's essential blepharospasm was a non-severe impairment based on the medical evidence submitted by Dr. Carlson, who consultatively examined Gastmier and diagnosed her eye condition. (R. 200). Although Dr. Carlson was not a treating physician, his report is the only medical evidence in the record concerning the effects of Gastmier's eye condition.

Dr. Carlson described Gastmier's condition as resulting in an involuntary closing of the eye "similar to a wink". He stated that her vision in the left eye was 20/50, correctable to 20/20. She had no cupping of the optic nerve, and her macula and retinal vessels were normal. She had a normal field of vision. Based on his exam, Dr. Carlson concluded that her "central and peripheral vision are such that, she would not meet the requirements of paragraph 2 of the disability manual." (R. 200). Dr. Carlson's opinion concerning the effects of Gastmier's eye condition is unrebutted by medical evidence.

The record also contains several notes from treatment Gastmier received at the PICH. These reports relate to treatment Gastmier sought for a variety of conditions, however, on several occasions they note an examination of Gastmier's eyelid as within normal limits. (R. 286, 289-292). Gastmier has not cited the Court to any

other medical complaint related to her eye condition. The only other reference discerned by the Court is Dr. Morales' observation that Gastmier had a "slight twitch on the left side of her face" during her initial evaluation in May, 2008.

Gastmier's brief argues that the ALJ erred by failing to properly credit Gastmier's testimony concerning the intensity and persistence of her symptoms. She also cites a general observation in Dr. Carlson's report that the essential blepharospasm condition "can be a very disabling disease." While Dr. Carlson's description of the condition did indicate that it could be disabling, he did not find Gastmier's condition disabling. This finding is consistent with the other medical evidence.

Gastmier did testify that the condition affects her in two ways. She stated that her eye spasms when she goes into the sunlight, and that she "has a hard time . . . looking at a computer." (R. 32). This testimony is not markedly inconsistent with the ALJ's finding that this involuntary twitch or wink was non-severe. To the extent it was inconsistent, the ALJ appropriately found Gastmier's testimony concerning the intensity persistence and limiting effects of her symptoms only partial credible. This finding is amply supported by her complete lack of medical records, or treatment related to the condition despite her regular visits to community-based healthcare providers for other ailments.

12

Gastmier does correctly identify one error in the ALJ's opinion. The ALJ found support for his finding in a misinterpretation of Gastmier's testimony. He stated that Gastmier had "managed to work for 27 years with her left eye involuntarily blinking." (R. 15). This finding is not supported by the evidence. Gastmier's eye injury occurred in 2003. Her testimony concerning 27 years of work, related to prior employment as a computer security technician, a job she lost prior to her injury. Given the other evidence before the ALJ and the very limited testimony from Gastmier herself concerning any limiting effects imposed by this condition, this error does not affect the Court's recommended finding that the ALJ's determination was supported by substantial evidence.

2. **Substantial evidence contained in the record as a whole supports the ALJ's finding that Gastmier's bi-polar disorder was a non-severe impairment.**

When evaluating the severity of a mental impairment, the Social Security regulations prescribe special techniques. 20 C.F.R. § 404.1520A(a). If the claimant has a medically determinable mental impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment in four broad functional areas. These four areas include (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Id. The ALJ uses

13

ratings of the degree of functional limitation in these areas to determine the severity of the mental impairment. If the first three functional areas are assigned a rating of "none" or "mild" and there is no evidence of decompensation, the mental impairment will generally be considered not severe. Id.

Because Gastmier had a medically determinable mental impairment of bi-polar disorder, the ALJ applied the special technique required by the regulations and rated her impairment in each of the four functional areas. He found no evidence of decompensation in the fourth area, and no limitation in her activities of daily living or social functioning. In fact, Gastmier testified that she takes care of her elderly mother, and their home, preparing all their meals, and keeping the house. (R. 112 - 114). She repeatedly attends AA meetings at a variety of locations, all without apparent ill effect from her condition. (R. 33). The ALJ did find mild limitation in the area of concentration, persistence or pace, but in combination with the other findings concluded that Gastmier's mental impairment was not severe.

In addition, the ALJ noted that Gastmier responded well to the treatment prescribed by Dr. Morales. According to her treatment notes, Gastmier's bi-polar condition was in remission approximately seven months after beginning treatment. Accordingly, the ALJ found the impairment was, by definition not severe. See 20 CFR §§

14

404.1509 and 416.909(requiring a condition which lasts, or is expected to last, 12 months).

## V.  RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be affirmed.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court

15

based on such findings and recommendations. <u>Thomas v. Arn</u>, 474
U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984);
<u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
May  6 , 2010

16

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Charlene A. Mooring
Montagna Klein Camden LLP
425 Monticello Avenue
Norfolk, VA  23510

Mark Anthony Exley
United States Attorney Office
101 W. Main Street
Suite 8000
Norfolk, VA  23510

Fernando Galindo, Clerk

By

Deputy Clerk

May 6           , 2010